Good morning, Your Honors. May it please the Court, Randall Steinberg for the petitioner Ping Dong. This is a case about a woman, Ping Dong, who is prima facie eligible for asylum because of not just one, but two forced abortions and not just one, but two forced implantations of an IUD under China's one-child policy. To add insult, these forced abortions are not just the government's deciding not to have one child, not to have an additional child. This is a form of punishment meted out by the Chinese government for a woman getting pregnant again. To add insult to injury, as this Court said in Ray v. Gonzalez, like a set of nested Russian dolls, this case involves one layer of allegedly incompetent representation after another. But for this incompetent representation, Ping could very well be a U.S. citizen by now. What identified for us the incompetence that you, I guess your client needs that to get equitable tolling? Yes, Your Honor. So what's the incompetence? There's a lot of incompetence. The first incompetence and actually fraud was with the third attorney, Ping Shen, who was hired to file an appeal with the BIA. He filed a notice appeal, but then he did not file a brief on appeal. The case was dismissed. Ping missed her voluntary departure window, and then attorney Ping Shen lied about not filing a brief, or he didn't The fourth attorney, Steven Mattern, didn't file a motion to reopen until two years after the discovery. He discovered that Ping's malfeasance. Well, as I understood the Board's decision, it really did assume that she had received ineffective assistance, but ruled that she had not exercised due diligence and completed all of the steps required under Lozada and the regulation that is similar to it. What is your response to that assertion by the Board? Well, I think number one, the Board did not address the issue of prejudice at all. They had a very conclusory analysis as to due diligence, and under Saldana v. INS, that's a 1985 case, whenever the Board denies an alien's claim with a conclusory opinion, this Court can decide that the Board abuses discretion. As for due diligence, I think she was very diligent because she attended all six of her immigration court hearings. But the diligence that the Board was referring to was, as I understood it, lack of diligence in pursuing the Lozada requirements to demonstrate the backdrop for making the argument that ineffective assistance of counsel should toll, or equitably, the time for filing the motion to reopen. And it's that lack of diligence that they were focused on. Well, she filed a Lozada motion against Attorney Shen in addition to the fact that this Court held in Sun v. Mukasey that due diligence can actually outweigh the failure to comply with the Lozada requirements. Because in that case, the person was diligent, but they didn't file the Lozada requirements, and the Court said... And here they said she wasn't diligent, that she didn't do it soon enough or often enough to pursue it. Do you disagree with that? Well, what I was going to say is that there's no evidence in the record with regard to Mattern's late filing of his motion to reopen. There's no evidence in the record that she knew of that. And this Court has also said that when the attorney fails to file a brief on appeal, that prejudice is presumed, in addition to the fact that Ricardo Lares says that it defeats the purpose of equitable tolling to hold an alien who's already in a vulnerable position responsible for the errors of her counsel. Well, I guess I was looking at the diligence inquiry from a slightly different standpoint. I thought, ultimately, the mistake that your client was attributing to the prior counsel was not raising these forced abortions she underwent, I think back in the 1980s, if I'm remembering, earlier, right? So that she could get them properly before the immigration judge and the board. And it seems like there is evidence that she certainly knew, obviously, that she had undergone the forced abortions and that she knew that that could be a ground for relief, right? I'm glad you brought up the forced abortions because that is another issue. She went to a very deceptively named law firm, for lack of a better word to call it. It wasn't really a law firm because it wasn't run by lawyers. And the person there that she spoke to there told her that she wasn't eligible for asylum because she had passed the one-year bar. And I think that advice was even more egregious. Well, but that was not from a lawyer and she knew that, right? Right, but I think that you can construe that person's advice as an agent of the lawyer. He said he didn't even work there, didn't he? He did say he didn't work there, but he... I don't see how she could have reasonably relied on that advice from a non-lawyer who didn't even purport to work at the legal office she had gone to as a basis for saying, well, I guess I don't have an asylum claim based on what happened to me. I understand what you're saying, but while the person said that he didn't work there, he also said that he was standing in for his friend's son, which gives the impression that he was authorized to be there and give advice even if he was not ethically allowed to give advice. And Ms. Dong said in her statement that she had no reason to disbelieve what he said. She's a new immigrant to the country, she's not sophisticated, and she goes to this law firm that she described as probably the best in the country because of its name and because they charge more than everyone else. So she would infuse his advice with credibility, I would think. And when did she first raise the issue of the forced abortions with her subsequent attorneys after this encounter with this gentleman? I don't believe that she raised the issue because she was going by the advice from the person from U.S. Federal Law Office telling her that she wasn't eligible for asylum. And one of the things that I wanted to bring up is that she really tried to do everything right. She went to U.S. Federal Law Office while she was still in status with her visa and the person there told her that she had passed the one-year bar, but she was still in status and she had a reasonable time after January 1st, 1999, to start applying for asylum. She went to U.S. Federal Law Office sometime in 1998. But she was aware of the issue relative to the forced abortions, but then four subsequent attorneys she did not raise the issue with, is that correct? Yes. And after I answer this question, I want to reserve the rest of my time for rebuttal. I would think that a competent immigration attorney seeing a woman within childbearing age from China would raise the issue themselves because that's an important issue to raise and they should ask her. Current counsel did that. But we're looking at this in the context of her due diligence though, correct? Yes. And one of the other things I wanted to say is I think it's hard to say that she wasn't diligent when she hired five attorneys within the span of ten years. That's about one attorney every two years. That's a lot of lawyers. If I could reserve the rest of my time, I'd appreciate it, Your Honors. You may. Thank you. Mr. Robbins. Good morning, Your Honors. May it please the Court. Jonathan Robbins here on behalf of the Attorney General. Good morning. I'd like to start by asking you, does the government's prevailing in this case depend on, I guess, our determining that she could not reasonably rely on that first piece of advice from the non-lawyer at the law office? Because if she could rely on that advice, it seems to me it does sort of explain why it took so long for her to finally bring this issue to the Board's attention. Well, as Your Honor noted, again, this is somebody who she knew was not an attorney and who did not work at the law office. So they've conceded that point. So, I mean, they can't bring an ineffective assistive counsel claim against somebody like that. So, yes, I would agree that the government's position is that she can't rely on a non-attorney's advice in that regard. You know, I would note that the issue that she's raising with respect to these purported forced abortions didn't happen until 2011. So this is 11 years since she's been in proceedings. I mean, look, she newly arrived in this country, not sophisticated, perhaps, in terms of how the legal system works or perhaps even who are the most reliable sources of legal advice. I mean, I don't know, but I'm just spinning out one possible way of looking at the facts here. If she's told by someone she thinks is reliable in terms of giving her that advice that, sorry, you're just out of luck, you're not going to be able to pursue an asylum claim based on what would otherwise be valid grounds for obtaining asylum, it wasn't until, as I understand it, because none of her other lawyers asked her about this, and that's one of the things that your opponent pointed out, it wasn't until I think this last lawyer finally sort of said, hey, maybe you have this basis to get asylum. Well, respectfully, that's not exactly what they claim. What they claim is that they weren't specifically asked if she had any forced abortions. What they're not claiming, and they're very specific with that wording, they don't say that they weren't asked, were you ever harmed in China? Why do you fear going back to China? You know, did they ever have any problems with the Chinese government? In fact, when they were representing themselves pro se in 2004, the immigration judge asked them those kind of questions. Did you ever have any problems with the Chinese government? Did you ever, you know, and so it's not as though they haven't had an opportunity to set forth this claim regarding the forced abortions. Now, I understand what you're saying. Maybe this one person who wasn't a lawyer, who didn't work at the law office, tainted their way of thinking so that they didn't want to bring it up for 11 years. But they're not entitled to rely on that person's advice in regard to this particular, in regard to their claim before the courts. You know, and I want to be very clear. You know, they're blaming now four attorneys. I mean, it's a difficult thing to believe that four, none of these attorneys asked her if she feared returning to China. None of these attorneys asked her if she ever had any problems with the Chinese government. We know the immigration judge did. I mean, even if you throw out all the behavior of the attorneys and you just look at when they were representing themselves pro se, you know, the immigration judge warned them. He said, it's a perilous course to go pro se. You know, you have a burden to meet. You know, you're not going to be able to come back later and say, oh, I didn't have an attorney, I didn't know. And they still chose to proceed pro se in 2004 and present their claim as they saw fit. And while we can certainly sympathize that maybe a pro se alien might not have the best knowledge for pursuing their case, that is the route that they chose to go and it is their burden of proof to demonstrate their case. Not a mention of anything in that regard. I have a couple of questions. One thing in the 2011 decision of the board that struck me was that the board began one paragraph by saying that the respondent did not satisfy the requirements for a claim of ineffective assistance of counsel against Mr. Ogletree, who was dead. And I guess I wondered what is the board's position about whether you're supposed to file disciplinary proceedings against a dead lawyer. That just struck me as being an extremely odd sentence. I think it's safe to assume the board is not saying that an alien has to require somebody file his requirements against somebody who's dead. I think what the board is doing, and maybe they could have been more clear, Mr. Ogletree died in January of 2011. And if you recall, this isn't the first ineffective assistance of counsel claim they're making. But the earlier one was about Shen, though. Well, it was, exactly, and not about Mr. Ogletree. Right, but the board seemed to be relying on the fact that she had also not fulfilled the requirements against Ogletree. And that just made no sense to me at all. Well, I think because he died in January of 2011, she certainly had a huge opportunity, if she felt that Mr. Ogletree had been effective, who stopped representing her back in 2003, that there was a long period of time where she might have followed through with that type of procedure. But I don't think the board is saying you have to file LASADA requirements against dead people. Well, that's just nonsensical. It sounded that way. The other question I have is really a practical question. The government had asked us to hold this case in abeyance, presumably exploring the possibility of some form of relief for this petitioner. Is that off the table? Is there any possibility that mediation would be of assistance or that there is some other relief available to her through an I-130 or otherwise? We did pursue those other avenues, and unfortunately, there are no avenues available. In fact, the petitioner requested prior to oral argument if we would consider PD in this case. And we went to the agency, and they've declined to exercise discretion in this case. So mediation wouldn't be of any assistance here. We've already gone through that process. You know, I would note, with respect to the ineffective assistance of counsel that my colleague talked about with respect to Mr. Shen, who was the third attorney, about not filing a brief, that's not a claim that they raised in their first ineffective assistance of counsel claim against him. So this claim that they're saying that he didn't file a brief, it is true that he didn't file a brief in support of the appeal. He did file a very brief motion to remand in between the board's decision and the time that they filed the notice of appeal, so he didn't file nothing. But he did not file a written brief as was indicated in the box that he checked off. But that was something they could have raised in their very first ineffective assistance of counsel claim. I mean, that's something they definitely were aware of. It's footnoted in the board's decision itself. And they didn't petition for review of that first board decision denying their ineffective assistance of counsel claim with respect to Mr. Shen. So they can't renew that argument now in their second motion reopened before the court on appeal here. And, you know, they accuse Mr. Mattern here of not filing the ineffective assistance of counsel claim. Mr. Mattern was the fourth attorney. They accuse him of not filing the motion to reopen within a diligent period for his ineffective assistance of counsel against Mr. Shen. But again, that's something. First of all, they didn't raise that in their motion to reopen, in this motion to reopen to the board, so it's not properly exhausted. And they didn't raise it in their opening brief either, as far as I remember, in this case, so it's waived. The only time they raised it was really in their reply brief, which isn't the appropriate place to raise that issue for the first time. So with respect to Mr. Mattern, I would say that particular argument has not been exhausted and also waived. You know, the very first thing my colleague spoke about was that his colleague is allegedly prima facie eligible for asylum with holding of removal. That's not really relevant here. The board didn't deny the motion to reopen on a basis that petitioner wasn't prima facie eligible for asylum or withholding of removal. It was on the basis that the motion was untimely, number barred, and that equitable tolling wasn't warranted because petitioner hadn't established the requisite diligence. So prima facie eligibility really isn't an issue that's relevant to this particular analysis. So in your mind, we should just assume that she is prima facie eligible, nonetheless? No, I would assume that if petitioner were to win on these other issues and equitable tolling were warranted and reopening were warranted, then it would be sent back down for the board to determine in the first instance whether she was eligible, prima facie eligible for that relief or ultimately, you know, the board could do a number of different things if it went back down. But again, sending it back down isn't appropriate here given that equitable tolling simply isn't warranted. I mean, again, this is an issue of diligence. So we look to what did she know and when did she know it, when should she have known, when did she act, and was the time in between reasonable? And I think the record here pretty definitively demonstrates that she should have acted very early. She acted until, she didn't act until 2011 and that the time in between really wasn't reasonable. You know, part of the diligence arguments she's raised are part of a previous motion to reopen which she didn't, which she never filed a petition for review for so she can't really reincorporate that into her second motion to reopen. And to the extent that she's raising these new claims for the first time in the motion to reopen, there's also diligence problems with respect to those claims. And there's also, I mean, her case is sort of muddled. It's full of holes. There's never any lazada requirements with respect to Mattern. I mean, it's, I mean, I don't know how to describe it other, it's almost like, I don't want to say a pyramid scheme, but to get to Shen, to say that Shen was ineffective, she essentially has to blame her fourth attorney for being ineffective for not bringing the appropriate arguments against Shen. So because her first complaint against Shen was that he didn't inform her of the board's decision, now they're saying, well, that really wasn't complete enough. We have to go after Shen for also not filing a brief and for not raising forced divorces. So she's bringing sort of piecemeal ineffective assistance of counsel claims in different motions to reopen, some of which she's not even petitioning for review for. So, again, with respect to diligence, I think it should, I'm out of time, I think. So we would respectfully request that the, submit that the record amply demonstrates that she did not act with the requisite diligence and that the board's decision should be upheld in this case. So unless there are any other questions. I don't believe that there are. Thank you. Thank you very much for your time, Your Honors. Mr. Steinberg, you have some rebuttals. I'm glad the government brought up some of those issues. With regard to the forced abortions that I mentioned at the beginning, that was just background. The issue is whether the BIA abuses discretion when it denied the second motion to reopen and refused to equitably toll the 90-day deadline. The other thing I wanted to bring up also is the government likes to go back to the pro se issue and the fact is that the only person that was pro se in that case was the husband. It was his case. Ping was just a rider on that. And in fact, there was a time during that court case, and you can find this on page 83 of the record, where Ping tried to answer for her husband in court and the immigration judge said the wife cannot answer. So after that happened, she's not going to feel like she can really speak out about her issues. And then even before that, before the case started, the judge asked the husband, are you here representing yourself today? Yourself. And the husband answered yes. Ping didn't answer yes. The husband answered yes. And then finally, I wanted to say that per Rodriguez-Lawry's, it really defeats the purpose of equitable relief to deny it to someone who attended all six of her court hearings within four years and hired five attorneys within 11. Thank you. Thank you, counsel. The case just started, it's submitted, and we appreciate very much the arguments from both of you.
judges: Tunheim, Graber, Watford